# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# NORTHERN DIVISION

| | |
|---|---|
| GLADYS LUKER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION 14-0043-WS-B |
| | ) |
| WILCOX HOSPITAL BOARD, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## ORDER

This matter comes before the Court on the parties' Joint Motion for Approval of Settlement Agreement and Entry of Stipulated Judgment (doc. 29).

## I. Procedural History.

Plaintiff, Gladys Luker, brought this action against her former employer, Wilcox Hospital Board d/b/a J. Paul Jones Hospital (the "Hospital"), asserting multiple claims for relief under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"). In particular, Luker alleged that the Hospital had failed to pay her for hours worked or overtime compensation, as required by §§ 206 and 207 of the FLSA, and that the Hospital had violated the FLSA's anti-retaliation provision by firing her for complaining about unpaid work hours. Aside from her FLSA claims, Luker also asserted a state-law claim against both the Hospital and Elizabeth Kennedy (the Hospital's administrator) for tortious interference with business relations. This claim rested on allegations that defendants had interfered with Luker's business relationship with a company called Med Plus Disability Evaluations by declaring that she could not perform services for Med Plus at the Hospital.[1] For their part, defendants' position was that Luker had been paid all wages

---

[1] In addition to the FLSA and tortious interference claims joined in this lawsuit, Luker has pursued claims of age and sex discrimination against the Hospital in an ongoing administrative proceeding before the Equal Employment Opportunity Commission (the "EEOC Proceeding"). The proposed settlement in this case would encompass not only the FLSA and Alabama tort claims asserted by Luker herein, but also her claims in the EEOC Proceeding.

she was owed and that her employment at the Hospital had been terminated for legitimate non-retaliatory business reasons.

On June 19, 2014, some four months after Luker filed suit against the Hospital and Kennedy, the parties participated in a settlement conference before Magistrate Judge Bivins. Four days later, the parties notified Judge Bivins that they had reached a mutually agreeable compromise to settle this action in its entirety. (*See* doc. 28.) As required by applicable law and Judge Bivins' Order, the parties followed up by filing a detailed Joint Motion for Approval of Settlement Agreement and Entry of Stipulated Judgment.[2] That Motion is now ripe.

**II.     Analysis.**

   *A.     Statutory Requirement of Judicial Approval of FLSA Settlements.*

In the overwhelming majority of civil actions brought in federal court, settlements are not subject to judicial oversight, scrutiny or approval. Congress has specified that FLSA settlements are to be handled differently. Indeed, "Congress made the FLSA's provisions mandatory; thus, the provisions are not subject to negotiation or bargaining between employers and employees." *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352 (11th Cir. 1982); *see also Hogan v. Allstate Beverage Co.*, 821 F. Supp.2d 1274, 1281 (M.D. Ala. 2011) ("Settlement of an action under the FLSA differs from settlement of other claims. … [T]he FLSA's provisions are mandatory and generally not subject to bargaining, waiver, or modification by contract or settlement."); *Moreno v. Regions Bank*, 729 F. Supp.2d 1346, 1348 (M.D. Fla. 2010) ("Settlement of an action under the FLSA stands distinctly outside the practice common to, and accepted in, other civil actions.").

"Despite this general rule, an employer and an employee may settle a private FLSA suit under the supervision of the district court" where there is a "bona fide dispute over FLSA coverage." *Hogan*, 821 F. Supp.2d at 1281-82. What this means is that "[w]hen employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness." *Lynn's Food*, 679 F.2d at 1353; *see also Miles v. Ruby Tuesday, Inc.*,

---

[2]     The parties' Motion is sufficiently detailed to discharge their "obligation of providing sufficient information for the Court to assess the *bona fides* of their dispute, and the precise contours of their resolution." *Crabtree v. Volkert, Inc.*, 2013 WL 593500, *2 n.1 (S.D. Ala. Feb. 14, 2013) (citation omitted).

799 F. Supp.2d 618, 622-23 (E.D. Va. 2011) ("the reason judicial approval is required for FLSA settlements is to ensure that a settlement of an FLSA claim does not undermine the statute's terms or purposes"); *Burkholder v. City of Ft. Wayne*, 750 F. Supp.2d 990, 994-95 (N.D. Ind. 2010) ("[s]tipulated settlements in a FLSA case must be approved by the Court … because there is a fear that employers would coerce employees into settlement and waiver of their claims") (citations and internal quotation marks omitted). "If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute; we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation." *Lynn's Food*, 679 F.2d at 1354.[3]

At the core of *Lynn's Food*, then, is a directive that district courts must evaluate FLSA settlements for fairness, and must not simply rubber-stamp them as approved. The objective of this inquiry is "to ensure that employees have received all uncontested wages due and that they have received a fair deal regarding any additional amount that remains in controversy." *Hogan*, 821 F. Supp.2d at 1282. In effect, then, courts examine whether the proposed settlement "constitutes a fair and reasonable compromise of a *bona fide* FLSA dispute." *Crabtree v. Volkert, Inc.*, 2013 WL 593500, *3 (S.D. Ala. Feb. 14, 2013). That said, "[i]n reviewing FLSA settlements under *Lynn's Food*, courts should be mindful of the strong presumption in favor of finding a settlement fair." *Parker v. Chuck Stevens Chevrolet of Atmore, Inc.*, 2013 WL 3818886, *2 (S.D. Ala. July 23, 2013) (citations and internal quotation marks omitted). Such deference is warranted because, where parties reach a pre-trial, compromise settlement in an FLSA case, "the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement" and "[i]f the parties are represented by competent

---

[3] The Eleventh Circuit has recently clarified that "the rule of *Lynn's Food* applies to settlements between former employees and employers," not merely those between employees and their current employers. *Nall v. Mal-Motels, Inc.*, 723 F.3d 1304, 1307 (11th Cir. 2013) (reasoning that "[e]nsuring that each FLSA plaintiff receives the damages, including liquidated damages, to which she is statutorily entitled is no less important when the plaintiff is a former employee"). As the *Nall* panel put it, "[t]he purposes of the FLSA are undermined whenever an employer is allowed to escape liability for violations of the statute, regardless of whether those who were victimized by those violations are still employees." *Id.* at 1307-08. Thus, the *Lynn's Food* rule applies here, despite Luker's status as a former (not a current) Hospital employee.

counsel in an adversary context, the settlement they reach will, almost by definition, be reasonable." *Bonetti v. Embarq Management Co.*, 715 F. Supp.2d 1222, 1227 (M.D. Fla. 2009).

  **B.**  ***Fairness/Reasonableness of Settlement.***

The Joint Motion reflects that the parties did, indeed, have a *bona fide* FLSA dispute. Significantly, there was a good-faith factual disagreement as to whether the Hospital had paid Luker for all hours she actually worked.[4] If the finder of fact at trial were to resolve that disputed issue in the Hospital's favor, then Luker would recover nothing on her claims for back wages. Likewise, there appeared to be a *bona fide* factual dispute as to the FLSA retaliation claim, on the question of whether the Hospital terminated Luker's employment for cause or in retaliation for complaining about alleged FLSA violations.[5] To be clear, the point is not whether plaintiff would or would not ultimately have prevailed at trial; rather, the point is that plaintiff's FLSA claims were actually, reasonably in dispute, thereby giving rise to the possibility of a *Lynn's Food* compromise settlement of those disputed claims.

  **1.**  ***Terms of Settlement.***

Against this backdrop of litigation uncertainty, the parties negotiated a compromise settlement that would resolve Luker's claims against the Hospital and Kennedy in their entirety.

---

[4] In particular, the Hospital's position was that the training classes for which Luker demanded wages were undertaken without the Hospital's authorization or consent, and that those hours were not compensable work time under the FLSA. (Doc. 24, at 2-3.) At a minimum, the Hospital's argument might support a conclusion that its failure to pay Luker for those training classes was in good faith and that it had reasonable grounds for believing that its actions did not violate the FLSA, thereby rendering an award of liquidated damages inappropriate. *See, e.g., Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1282-83 (11th Cir. 2008) (discussing legal standard for FLSA liquidated damages).

[5] On this point, the Hospital disputed whether Luker had ever complained to Hospital officials of unpaid work hours (*i.e.*, whether she had engaged in protected activity under the FLSA). (Doc. 24, at 3.) The Hospital further asserted that it had terminated Luker's employment for a legitimate, non-discriminatory, non-retaliatory reason, to-wit: Luker's alleged failure to follow a physician's direct order regarding a patient's medication and her subsequent misrepresentation of that order on the patient's chart. (*Id.*) The factual dispute as to the reasons for Luker's discharge called into question not only the merits of plaintiff's FLSA retaliation claim, but also the Title VII and ADEA claims she was pursuing in the EEOC Proceedings. An adverse factual finding to plaintiff on this question would potentially have negated all of her retaliation and discrimination claims relating to the termination of her employment at the Hospital.

Specifically, this proposed settlement contemplates that defendants would pay Luker a lump-sum amount of $33,000, in exchange for which Luker would dismiss with prejudice both this lawsuit and her pending EEOC Charge, and would execute a broad release, pursuant to which she would release the Hospital, its employees and agents from all claims arising out of or connected with Luker's employment at the Hospital or the termination of same. (Doc. 29, Exh. A.) The settlement proceeds would be allocated as follows: (i) payment to Luker of $10,000 in back wages (representing Luker's estimate of the entire amount of back wages she would receive if she prevailed at trial); (ii) payment to Luker of an additional $8,000 for potential compensatory, liquidated or punitive damages available on any of her claims; (iii) attorney's fees of $14,600; and (iv) costs of $400 for the applicable filing fee. (Doc. 29, Exh. A, § 3.1(a); doc. 29, Exh. B at 2-3, 6.)

## 2. *Reasonableness of Payments to Plaintiff.*

In evaluating whether Luker received a fair deal for contested amounts under the FLSA, the Court affords substantial weight to the parties' representation that the $10,000 payment to Luker "represents Plaintiff's estimate of the entire amount of unpaid wages she would be able to recover if she were to prevail at trial." (Doc. 29, at 3.) Because plaintiff's FLSA back wage claim is effectively being paid in full, the Court has no reservations about accepting that aspect of the settlement agreement as fair and reasonable. *See generally Bonetti*, 715 F. Supp.2d at 1226 n.6 ("If the parties submit a stipulation stating that the plaintiff's claims will be paid in full, without compromise, there is no need for the Court to review the settlement.").

With regard to the additional $8,000 payment to Luker to encompass compensatory, liquidated and punitive damages for all of her claims (other than back wages on her FLSA claim), the Court agrees that such amount constitutes a fair and reasonable compromise of a *bona fide* dispute. As discussed *supra*, the Hospital had plausible (and potentially formidable) arguments that might foreclose Luker from receiving liquidated damages, and from recovering anything on her termination-related claims. Given the substantial legal and factual obstacles that Luker would have confronted at trial with respect to those claims, the substantial uncertainty that she would have prevailed on any claims for liquidated damages or for termination-related relief, and the considerable delay that plaintiff would have likely experienced in receiving payment even if she did prevail at trial, settlement of those claims in the agreed-upon amounts appears entirely reasonable. Stated differently, for Luker to parlay these doubtful and disputed claims

(other than her FLSA back wages claim) into a settlement of $8,000 paid to her (plus $10,000 in back wages, plus attorney's fees and costs) strikes the Court as unequivocally fair and reasonable. Moreover, this conclusion is bolstered by the fact that Luker was represented and advised at all times in the settlement negotiations by experienced, capable counsel. *See Crabtree*, 2013 WL 593500, at *3 (reasonableness determination as to FLSA settlement "is reinforced by the fact that plaintiffs were ably represented during the settlement negotiations by capable, experienced counsel with extensive experience in complex employment law cases").[6]

For all of the foregoing reasons, the Court is satisfied that the parties' agreed-upon settlement amount is a fair and reasonable resolution of a *bona fide* dispute as to Luker's FLSA causes of action, for purposes of *Lynn's Food* and its progeny. There are no uncontested wages remaining unpaid (because the settlement pays her 100 cents on the dollar for her claimed back wages), and Luker plainly received a fair deal as to claims that were the subject of a *bona fide* controversy between the parties.

### 3. *Reasonableness of Confidentiality Clause and Release.*

Determining that the settlement payments to Luker herself are fair and reasonable does not conclude the judicial inquiry. As noted, the proposed settlement agreement includes two features that require particular scrutiny, including a confidentiality clause and a broad release. With regard to the former, the settlement agreement contains a provision in which all parties would "agree that the terms and conditions of this Agreement are strictly, and shall forever remain, confidential." (Doc. 29, Exh. A, § 3.3.) The latter is a broad release in which Luker would release the Hospital and its employees and agents from all claims and causes of action (not just her FLSA claims) "arising out of or in any way connected with the employment of Luker by the Hospital and with Luker's separation from employment with the Hospital." (*Id.*, § 3.2(a).)

"[A] substantial body of authority has denounced the use of confidentiality clauses in FLSA settlements." *Crabtree*, 2013 WL 593500, at *4. Typically, these authorities "criticize[]

---

[6] It also bears noting that the settlement was achieved in part under the watchful eye of Magistrate Judge Bivins at a judicial settlement conference. Judge Bivins is well-versed in the requirement that FLSA settlements be fair and reasonable under *Lynn's Food* (see doc. 28), so her involvement in the negotiations lends further support to the conclusion that the parties reached a FLSA-compliant agreement.

such provisions as (i) operating unequally to the benefit of the employer alone, and (ii) frustrating FLSA goals by thwarting the public's independent interest in assuring that employees' wages are fair." *Id.* (citations and internal marks omitted). But neither of these considerations are in play here. Indeed, the parties' Joint Motion reflects that Luker, not defendants, initially demanded the confidentiality clause to promote her interest in not having the terms of settlement become common knowledge in the small town where she resides. (Doc. 29, at 5-6.)[7] Thus, there is simply no concern here that the confidentiality clause is a one-sided provision redounding solely to the employer's benefit. *See Crabtree*, 2013 WL 593500, at *5 (approving confidentiality clause in FLSA settlement where plaintiffs "were the driving force animating the inclusion of broad confidentiality clauses in their settlement agreements … to benefit plaintiffs in their quest to remain gainfully employed in the Right-of-Way industry"). Furthermore, the public's interest in assuring that employee wages are fair is "adequately safeguarded by the disclosure in this Order of the … terms of the FLSA settlement." *Id.* Because the confidentiality provision in the settlement agreement benefits Luker and will not block the public from gaining access to the terms of settlement via the court file, the Court finds that the confidentiality clause in the proposed settlement agreement is not offensive to public policy or the objectives of the FLSA. *See generally Crabtree*, 2013 WL 593500, at *4 ("all but the most doctrinaire opinions on the subject acknowledge that there may be circumstances where confidentiality provisions may be appropriate and should be accepted") (citations omitted).

With respect to the release, this Court has adhered to the general rule that "pervasive releases should be examined closely in FLSA cases because of the risk that an employee would unknowingly make a valuable concession to the employer simply to recover wages that should never have been withheld in the first place, and should be approved only where the employee has a full understanding of what he is releasing in exchange for a settlement award." *Crabtree*, 2013 WL 593500, at *6 (citation and internal quotation marks omitted). Here, the parties represent that "Plaintiff has knowingly entered into the Settlement Agreement and is aware of the risks of the release contained in" it. (Doc. 29, at 7.) They further state that "beyond the claims that

---

[7] The body of the settlement agreement emphasizes that "[a]ll parties agree that this confidentiality provision inures to each of their benefits and is desired by all parties." (Doc. 29, Exh. A, § 3.3.)

Plaintiff has asserted in this action, the parties are not aware of any other arguably viable claims that Plaintiff has against any of the Defendants." (*Id.*) In other words, there is no reason to believe that by agreeing to a broad release, Luker is suffering a substantial detriment or making a substantial concession in order to obtain compensation under the FLSA. Moreover, as previously discussed, this is not a case in which "full compensation" was unquestionably owed to Luker on her FLSA claims. Had she gone to trial, she might have recovered nothing. Under these circumstances, the premise that Luker made a meaningful non-cash concession for the Hospital's benefit to obtain back wages that the defendant undoubtedly owed her anyway under the FLSA has no application.

Simply put, all information before the Court is that Luker agreed to the broad release in the settlement agreement upon the advice of her qualified counsel, with full knowledge of the risks involved (namely, the risk that some other accrued, unknown viable claim against the Hospital might later come to light, but that the release would render Luker powerless to prosecute it). The court file confirms that Luker's decision to accept those risks is a reasonable compromise in the context of the overall settlement package, particularly given the absence of any reason to believe that she has or may have any other viable claims against the Hospital or Kennedy. And it does not appear that Luker's full compensation for FLSA back wages was in any way diluted by her voluntary agreement to enter into such a release. Accordingly, the Court is of the opinion that Luker's broad release of claims in defendants' favor represents a permissible component of a fair, knowing compromise, and in no way renders the settlement unfair or unreasonable in a *Lynn's Food* analysis.

      **4.  *Reasonableness of Attorney's Fee Award.***

A potentially problematic aspect of FLSA settlements occurs when the parties agree to a lump-sum settlement, then plaintiff and her lawyer decide how to allocate that payment between them. The FLSA's policy objectives could be threatened by the inequitable division of settlement proceeds between a plaintiff and her counsel; moreover, the possibility of conflicts of interest looms large. For these reasons, "a court reviewing an FLSA settlement must review the reasonableness of counsel's legal fees to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement." *Crabtree*, 2013 WL 593500, at *7 (citation and internal quotation marks omitted).

The record before the Court establishes that the proposed fee award to plaintiff's counsel out of settlement proceeds is manifestly reasonable. Using a lodestar analysis, "[t]he starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. … The product of these two figures is the lodestar and there is a strong presumption that the lodestar is the reasonable sum the attorneys deserve." *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008) (internal citations and quotation marks omitted). Plaintiff's counsel is requesting an hourly rate of $220 for her services, and has made a substantial showing that such a rate is reasonable in the Mobile, Alabama market for a lawyer of her experience and qualifications. (*See* Richardson Decl. (doc. 29, Exh. B), at 3-5; Brewster Decl. (doc. 29, Exh. C), at 1-2.) Additionally, plaintiff's counsel submits time sheets showing that she devoted 82 hours to working on this matter, yet she only seeks compensation for 66.4 of those hours, a voluntary 19% reduction. Review of plaintiff's counsel's time logs reveals that the vast majority of her claimed hours appear reasonable and appropriate. The 19% voluntary reduction is surely sufficient to offset any adjustment that the Court might be inclined to make for particular time entries. No further modification of the lodestar amount appears appropriate under any of the applicable factors.

In sum, the claimed hourly rate and the claimed hours are both reasonable. There is no information suggesting that the allocation of $15,000 of settlement proceeds for attorney's fees ($14,600) and costs ($400) taints or undermines the fairness of the settlement amount ($18,000) paid to Luker for her FLSA causes of action. Accordingly, the Court approves the proposed attorney's fees and costs as reasonable.

### III. Conclusion.

For all of the foregoing reasons, the Court concludes that the proposed settlement is a fair deal for the plaintiff. On that basis, the parties' Joint Motion for Approval of Settlement Agreement and Entry of Stipulated Judgment (doc. 29) is **granted**. The settlement of plaintiff's

FLSA claims is **approved** as fair and reasonable pursuant to *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982). A stipulated final judgment will be entered separately.[8]

DONE and ORDERED this 16th day of July, 2014.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE

---

[8] An FLSA settlement agreement that is "not made under the supervision of the Secretary of Labor … is valid only if the district court entered a 'stipulated judgment' approving it." *Nall*, 723 F.3d at 1308.